**UNITED STATES of America,**
**Appellee,**

v.

**Duane Arthur MYERS, Defendant–**
**Appellant.**

**Docket No. 04–3498–CR.**

United States Court of Appeals,
Second Circuit.

Argued: March 24, 2005.

Decided: Sept. 27, 2005.

Timothy W. Hoover, Federal Public Defender's Office, Western District of New York, Buffalo, NY, for Defendant–Appellant.

Stephan J. Baczynski, Assistant United States Attorney, of counsel (Michael A. Battle, United States Attorney for the Western District of New York, on the brief), Buffalo, NY, for Appellee.

Before: SOTOMAYOR, RAGGI and HALL, Circuit Judges.

SOTOMAYOR, Circuit Judge:

Duane Arthur Myers ("Myers") appeals from a judgment entered on June 10, 2004, in the United States District Court for the Western District of New York (Skretny, J.). Myers pled guilty to one count of receiving child pornography in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(2)(A). The court sentenced Myers to a 78–month term of imprisonment and five years of supervised release. The court imposed several special conditions as part of Myers's term of supervised release. On appeal, Myers challenges only the special condition prohibiting him from spending time alone with his child absent advance authorization from the U.S. Probation Office. Because the present record does not permit us to assess the validity of the special condition, we vacate the condition and remand for resentencing consistent with this opinion.

## BACKGROUND

During the summer of 2001, Myers, a thirty-nine-year-old male New York resident, struck up an internet relationship with a thirteen-year-old girl in Colorado. Myers posed as a sixteen-year-old boy in his email exchanges with the girl. The girl sent Myers pictures of herself. In response, Myers encouraged the girl to email him sexually explicit photos. She complied, emailing Myers a photograph that she had taken of her breasts and genitals. Myers pressed the girl for more photographs of herself. When she expressed reluctance, Myers threatened to tell the girl's father about the photo she had already sent. The girl sent additional nude photographs of herself.

On February 21, 2003, Myers pled guilty to one count of knowingly, through the use of a computer, receiving child pornography in interstate commerce consisting of a visual depiction of an actual person less than eighteen years of age, in violation of 18 U.S.C. § 2252A(a)(2)(A). Prior to sentencing, the probation office prepared a Pre–Sentence Report ("PSR"). The PSR detailed Myers's prior New York State conviction for sexual misconduct involving another young girl. The incident underlying that conviction took place in 1996, while Myers was staying overnight at his girlfriend's home. The girlfriend's eight-year-old niece, who was also staying overnight, climbed into his bed while he slept. Upon waking, Myers began to tickle her, but later placed his hand down her underwear and touched the girl's vaginal area. In a subsequent interview, Myers admitted to tickling the girl and to touching her inappropriately, but stated that he had realized "within seconds" that what he was doing was wrong and sent her back to bed. In 1997, Myers pled guilty to second-degree child abuse, a misdemeanor under New York State law. As a condition of probation for that offense, Myers participated in sex offender treatment. The PSR indicates that he was diagnosed with "pedophilia, sexually attracted to females, nonexclusive type."

The PSR also described Myers's family circumstances. Myers has never been married, and has a son, now five years old, with his girlfriend.[1] His girlfriend has eight children and was married to another man at the time she had Myers's child. After one of her children had an accident, Social Services removed all eight children from her care. At the time of his presentence interview, Myers was attempting

---

1. The PSR does not clarify whether the girlfriend with whom he had his son is the same girlfriend whose niece he molested.

to obtain visitation rights to see his son, who was in foster care. Myers asserts that "[u]p until the date of his arrest ... [he] played an active role in his son's life, residing with his son, his girlfriend, and his girlfriend's other children," and that he has played and will continue to play an important role in raising his son.

Myers's first sentencing hearing took place on May 30, 2003. The court sentenced Myers to, *inter alia*, 78 months of incarceration and a term of five years of supervised release. In its pre-sentencing submissions, the government did not move to impose any special conditions. The PSR did not recommend any special conditions of supervised release. Neither Myers nor the government objected to the PSR. The district court, however, imposed special conditions of supervised release in addition to a variety of standard conditions. Several of these special conditions curtailed Myers's access to minor children, including (1) a prohibition against unsupervised contact with any child under 18, absent supervision by a law-abiding adult who is aware of Myers's background and/or conviction; (2) a requirement that Myers report immediately any inadvertent contact with minor children to the probation office; and (3) a requirement that Myers secure authorization from the probation office before having any contact with his child.

At the sentencing hearing, defense counsel objected to several of the conditions of supervised release, including the restrictions on Myers's ability to visit, reside with, or take care of his son. Defense counsel initially objected that Myers "has to be precleared to visit with his own son without another adult present." Judge Skretny stated:

I did not think this through, but when I articulated the condition, I did not expect that that would mean that every amount of time that he spends with his son during that approved visitation would have to be in the presence of another adult, but that the visitation itself would have to be preapproved, so that the probation office would be on notice with respect to when this visitation took place, so if they had to speak with the child afterwards, they could do that.

The district court further emphasized the importance of prior notice to the probation office so that it could "randomly check on what was going on during the course of the visitation." The court observed that these conditions provided Myers with "the incentive to have a special relationship with his child, but yet put[ ] him on notice that ... visitation and the activities can still be in some fashion monitored for the best interests of the child."

Defense counsel also argued that restricting Myers's access to his son violated the "strong due process right ... to be with [one's] family members." He argued that the pre-approval condition was unjustified in light of the fact that (1) the instant offense did not involve Myers's son, (2) the government had not alleged that Myers had committed misconduct towards his son in the past, and (3) other standard conditions, such as the probation office's ability to make unannounced visits to check with Myers's son, would adequately deal with the court's concerns. The district court responded by noting that Myers's prior conviction relating to the eight-year-old girl was "something that has to be considered here in terms of his interaction with his own child. And I think it makes [the condition] reasonable."

The written judgment of sentence that the district court subsequently entered on June 9, 2003, provided, however, that Myers was to have no unsupervised contact with any child. Myers appealed his

sentence to this Court, arguing, *inter alia,* that this condition conflicted with the oral sentence, which did permit unsupervised contact with his son. This Court agreed that the oral sentence and written judgment were in conflict and that the oral sentence should control; in light of this and a separate error not relevant to the present appeal, we vacated the judgment of conviction and remanded the case for modification of the written judgment, in accordance with the oral sentence. *United States v. Myers,* 89 Fed.Appx. 298, 299–300 (2d Cir.2004).[2] We did not reach the merits of Myers's constitutional objection to the oral condition imposed.

At the second sentencing proceeding, which took place on June 7, 2004, defense counsel renewed his objection to the special condition. He argued that the limitations on Myers's contact with his son were a greater deprivation of liberty than reasonably necessary under 18 U.S.C. §§ 3553(a) and 3583(d), and unconstitutionally interfered "with the parent child relationship in the absence of any evidence that Mr. Myers is a threat to his own child." The court ultimately imposed the pertinent special conditions as follows:

> The defendant is to have no unsupervised contact with any child under the age of 18 other than his child without supervision of a responsible, law-abiding adult aware of [his] background and/or conviction. If the defendant has an inadvertent contact with a child under the

age of 18, it is to be immediately reported to the U.S. Probation Office. *The Probation Office has the discretion to authorize the defendant to spend time alone with his child and to pick up his child from school or other functions; however, authorization must be obtained in advance.*

This timely second appeal followed.

## DISCUSSION

Myers challenges neither his conviction nor the reasonableness of his 78–month sentence.[3] Myers also does not object to the restraints generally placed upon his contact with minor children. He only contests the special condition that requires him to obtain authorization from the probation office before he may spend time alone with his son. Myers argues that in the absence of evidence that he poses a threat to his own son, the condition encroaches upon the constitutionally protected parent-child relationship. In the absence of such evidence, Myers also argues that the condition transgresses 18 U.S.C. § 3583(d)(1)'s requirement that the condition must reasonably relate to the offense of conviction or to the offender's personal characteristics, as well as 18 U.S.C. § 3583(d)(2)'s requirement that the condition impose no greater deprivation of liberty than is reasonably necessary.

■ As a threshold matter, we reject the government's suggestion that we should delay or avoid consideration of this

---

**2.** The oral sentence constitutes the judgment of the court, and supplies authority for the execution of the court's sentence, while " '[t]he written commitment order is mere evidence of such authority.' " *United States v. Werber,* 51 F.3d 342, 347 (2d Cir.1995) (quoting *United States v. Marquez,* 506 F.2d 620, 622 (2d Cir.1974) (further internal quotation marks omitted)). Where an unambiguous oral pronouncement of sentence directly conflicts with the written judgment and commitment, the oral pronouncement must control.

*See United States v. Truscello,* 168 F.3d 61, 62 (2d Cir.1999).

**3.** When asked at oral argument, Myers's counsel stated that Myers does not seek a remand for consideration of whether he should be resentenced in light of *United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and *United States v. Crosby,* 397 F.3d 103 (2d Cir.2005).

matter because of the possibility that Myers's family circumstances might change upon Myers's release from prison. The government argues that, given Myers's current incarceration and uncertain future family circumstances, nothing would preclude Myers from moving to modify the condition under 18 U.S.C. § 3583(e)(2).[4] As the government appeared to concede at oral argument, however, Myers would be unable to challenge the constitutionality of the condition under that provision. *See United States v. Lussier*, 104 F.3d 32, 34–35 (2d Cir.1997) ("The plain language of subsection 3583(e)(2) indicates that the illegality of a condition of supervised release is not a proper ground for modification under this provision" and "does not authorize the court to assess the lawfulness of a condition of release.").[5] *Compare United States v. Balon*, 384 F.3d 38, 40, 46–49 (2d Cir. 2004) (extending existing interpretation of § 3583(e), permitting modification of conditions of supervised release upon new or unforeseen circumstances, to encompass "changing computer technology [as] an appropriate factor to authorize a modification of supervised release conditions under Section 3583(e)," and therefore dismissing

technology-related aspects of appeal with instructions to the district court to reconsider the condition at a time closer to start of defendant's term of supervised release), *with Loy*, 237 F.3d at 270 (construing special condition narrowly to avoid constitutional concerns, noting that district court could consider extending condition at a future date under § 3583(e) and "the constitutionality of the restriction can likewise be reviewed at that time," but refusing to accept government's argument that condition should be broadly construed, thereby placing burden on defendant to seek future modification). As discussed below, although we do not delay consideration of this matter due to the possibility of changing circumstances, the district court may later modify the conditions of supervised release if circumstances change.

## I. Conditions of Supervised Release and Fundamental Liberty Interests

■ We review the propriety of conditions of supervised release for abuse of discretion. *United States v. Brown*, 402 F.3d 133, 136 (2d Cir.2005). A sentencing court may impose special conditions of supervised release that are "reasonably

---

4. The modification provision provides:
 (e) Modification of conditions or revocation.—The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)—
 . . . .
 (2) extend a term of supervised release if less than the maximum authorized term was previously imposed, and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision.
 18 U.S.C. § 3583(e)(2).

5. We express no opinion on whether changed circumstances might implicate constitutional concerns permitting judicial scrutiny at a later date. *See United States v. Loy*, 237 F.3d 251, 270 (3d Cir.2001). Taken to its logical extreme, we note that the government's wait-and-see argument would apply to *any* incarcerated defendant challenging a condition of supervised release on direct appeal, thereby disrupting Congress's intent in providing streamlined procedures for reviewing terms of supervised release. *See Lussier*, 104 F.3d at 36–37 (detailing "streamlined scheme of sentencing review" established by Sentencing Reform Act of 1984 and rejecting defendant's attempt to attack special condition's legality under 18 U.S.C. § 3583(e)(2) as, *inter alia*, contrary to congressional intent in enacting that scheme).

related" to certain statutory factors governing sentencing, "involve[ ] no greater deprivation of liberty than is reasonably necessary" to implement the statutory purposes of sentencing, and are consistent with pertinent Sentencing Commission policy statements. 18 U.S.C. § 3583(d); *United States v. Sofsky*, 287 F.3d 122, 126 (2d Cir.2002). Section 5D1.3(b) of the United States Sentencing Guidelines (U.S.S.G.) [6] authorizes sentencing judges to impose special conditions of supervised release

> to the extent that such conditions (1) are reasonably related to (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from further crimes of the defendant; and (D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and (2) involve no greater deprivation of liberty

than is reasonably necessary for the purposes set forth above and are consistent with any pertinent policy statements issued by the Sentencing Commission.

U.S.S.G. § 5D1.3(b); *accord* 18 U.S.C. § 3553(a); *Brown*, 402 F.3d at 136–37; *United States v. Germosen*, 139 F.3d 120, 131 (2d Cir.1998).

■■■ "[S]entencing courts have 'broad discretion to tailor conditions of supervised release to the goals and purposes outlined in § 5D1.3(b).'" *United States v. Amer*, 110 F.3d 873, 883 (2d Cir.1997) (quoting *United States v. Abrar*, 58 F.3d 43, 46–47 (2d Cir.1995)). Our Circuit has held that a sentencing court may impose a condition of supervised release "if it is reasonably related to any one or more of the specified factors." *United States v. Abrar*, 58 F.3d at 46. The district court's broad discretion is not "untrammelled," however, *id.* at 47, and our Court "will 'carefully scrutinize unusual and severe conditions.'" *Sofsky*, 287 F.3d at 126 (quoting *United States v. Doe*, 79 F.3d 1309, 1319 (2d Cir.1996) (further internal quotation marks omitted)).[7]

---

**6.** We refer to the version of the Guidelines in effect on July 10, 2004. *See* U.S.S.G. § 1B1.11 (2003).

**7.** In a number of cases, this Court has vacated conditions that it concluded did not meet the criteria established by § 3553(a) and U.S.S.G. § 5D1.2(b)(1). *See, e.g., Brown*, 402 F.3d at 138–39 (vacating special condition prohibiting defendant from accumulating debt without preauthorization from probation office because record did not show how ban deterred future criminal conduct or assisted in defendant's rehabilitation and because condition was greater deprivation of defendant's liberty than reasonably necessary); *Sofsky*, 287 F.3d at 126–27 (vacating special condition prohibiting defendant from accessing computers or internet following conviction for receipt of child pornography via internet because, while condition reasonably related to sentencing goals "in light of the nature of his offense," restriction "inflict[ed] a greater deprivation

on Sofsky's liberty than [was] reasonably necessary"); *Doe*, 79 F.3d at 1322–24 (vacating special condition of occupational restriction where record had not established "reason to believe that, without such a restriction, the defendant [would] continue to engage in unlawful conduct similar to that for which he was convicted, and that such a restriction [was], therefore, reasonably necessary to protect the public"); *Abrar*, 58 F.3d at 46–47 (vacating special condition requiring defendant to pay personal debts unrelated to offense because condition did not reasonably relate to relevant sentencing factors); *see also United States v. Peterson*, 248 F.3d 79, 82–84 (2d Cir.2001) (vacating special condition of probation banning use of computer/internet absent prior approval from probation office because, *inter alia*, "[c]omputers and Internet access have become virtually indispensable in the modern world of communications and information gathering," and condition was unreasonable occupational restriction).

Because conditions of supervised release must "involve[ ] no greater deprivation of liberty than is reasonably necessary for the purposes" of sentencing, 18 U.S.C. § 3583(d)(2), we must ask first whether the condition at issue here deprived Myers of any cognizable liberty interest. Myers claims the condition interfered with his constitutionally protected liberty interest in his relationship with his child.

 It is well-established that a parent's interest in maintaining a relationship with his or her child is protected by the Due Process Clause of the Fourteenth Amendment. *Wilkinson v. Russell,* 182 F.3d 89, 103–04 (2d Cir.1999). *See Troxel v. Granville,* 530 U.S. 57, 65–66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion of O'Connor, J.) (describing "the fundamental right of parents to make decisions concerning the care, custody, and control of their children" as "perhaps the oldest of the fundamental liberty interests recognized by this Court"); *see also Wisconsin v. Yoder,* 406 U.S. 205, 232, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). The constitutional privileges attached to the parent-child relationship, however, are hardly absolute. "Although parents enjoy a constitutionally protected interest in their family integrity, this interest is counterbalanced by the compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves." *Wilkinson,* 182 F.3d at 104 (internal citations and quotation marks omitted). In particular, the right of unmarried fathers to participate in their children's upbringing receives less protection where the biological father has not "demonstrate[d] a full commitment to the responsibilities of parenthood by coming forward to participate in the rearing of his child." *Lehr v. Robertson,* 463 U.S. 248, 261, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983) (internal quotations omitted). "[T]he mere existence of a biological link does not merit equivalent constitutional protection." *Id.*

 While this Circuit has examined special conditions of supervised release implicating constitutionally protected interests, *cf. United States v. Lifshitz,* 369 F.3d 173, 188–93 (2d Cir.2004) (analyzing special condition of probation permitting computer monitoring under Fourth Amendment's "special needs" doctrine), we have not squarely addressed a special condition of probation or supervised release implicating a fundamental liberty interest protected by due process.[8] The statutory

8. Applying the constitutional avoidance canon, *United States v. Jacques,* 321 F.3d 255 (2d Cir.2003), vacated and remanded a condition of probation requiring that the defendant not associate with known felons. *Id.* at 266. The defendant's common-law husband was a convicted felon, a fact not reflected in the record, and thus the condition could interfere with her constitutionally protected right to maintain that relationship. *Id.* (citing *Roberts v. U.S. Jaycees,* 468 U.S. 609, 617–18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984) (recognizing a constitutional right to enter into and to maintain certain intimate human relationships)). This Court observed that "because constitutional difficulties could arise if the associational condition were construed to interfere with [defendant's] relationship with her family, we do not think the district court intended to interfere with [her] established familial relationships and do not read the condition as applying to [her] association with [her husband]." *Id.* (citing *Loy,* 237 F.3d at 270). In *United States v. Rosario,* 386 F.3d 166 (2d Cir.2004), a defendant challenged a restriction on contact with his son that conditioned such contact on approval by the New York Family Court or other court having jurisdiction. *Id.* at 168. In that case, however, the government agreed that the written judgment improperly varied from the oral sentence, and the *Rosario* Court vacated and remanded without evaluating the propriety of the limitation. *Id.* at 169. Finally, *United States v. Cabot,* 325 F.3d 384 (2d Cir.2003), in upholding a condition precluding a defendant from possessing pornographic material, the Court

architecture for evaluating conditions of supervised release, however, is the same in both contexts. If a special condition implicates a fundamental liberty interest, we must carefully examine it to determine whether it is "reasonably related" to the pertinent factors, and "involves no greater deprivation of liberty than is reasonably necessary," 18 U.S.C. § 3583(d), and our application of these criteria must reflect the heightened constitutional concerns. If the liberty interest at stake is fundamental, a deprivation of that liberty is "reasonably necessary" only if the deprivation is narrowly tailored to serve a compelling government interest. *See Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S.Ct.

2258, 138 L.Ed.2d 772 (1997) (citing *Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993)).[9]

In short, when a fundamental liberty interest is implicated by a sentencing condition, we must first consider the sentencing goal to which the condition relates, and whether the record establishes its reasonableness. We must then consider whether it represents a greater deprivation of liberty than is necessary to achieve that goal. Here, however, the record was inadequate on both prongs of the inquiry, allowing us neither to identify the goal to which the condition related nor to determine whether an undue deprivation of liberty occurred.[10]

referred to the "defendant's diminished due process rights during supervised release." *Id.* at 385. However, the cases cited to support this statement, *United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001), and *United States v. Reyes*, 283 F.3d 446, 460 (2d Cir.2002), both concern a defendant's diminished Fourth Amendment privacy interests during supervised release. This remark in *Cabot* should not be misread as a holding that all due process protections are *ipso facto* diminished during supervised release.

9. Other circuits have similarly reviewed conditions implicating certain constitutionally protected interests in terms of how well the district court calibrated the burdening condition to the underlying government interest. *See United States v. Crandon*, 173 F.3d 122, 128 (3d Cir.1999) (upholding condition of supervised release implicating constitutionally privileged rights of speech and association as it was "narrowly tailored" and "directly related to deterring [the defendant] and protecting the public"); *United States v. Ritter*, 118 F.3d 502, 505 (6th Cir.1997) ("[T]hough supervised release restrictions may affect constitutional rights such as First Amendment protections, most restrictions are valid if directly related to advancing the individual's rehabilitation and to protecting the public from recidivism."); *United States v. Mills*, 959 F.2d 516, 519–20 (5th Cir.1992) (upholding restriction that defendant not participate in sale of automobiles upon conviction for manipulating

odometers, but rejecting condition that he sell car dealership because condition was "not the *minimum condition reasonably necessary* to protect the public" (emphasis added)); *United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir.1991) ("The sentencing judge has broad discretion in setting probation conditions, including restricting fundamental rights. The restriction on [the defendant's] association rights is valid if: (1) primarily designed to meet the ends of rehabilitation and protection of the public and (2) reasonably related to such ends." (internal citations omitted)).

10. The record was not fully developed below in part because neither Myers nor the government received notice of the special condition prior to sentencing. We recently observed in *Brown* that other circuits have held that defendants are "sometimes entitled to notice in advance of sentencing that the district court is considering special conditions." *Brown*, 402 F.3d at 139 (citing *United States v. Wise*, 391 F.3d 1027, 1032–33 (9th Cir.2004), and *United States v. Scott*, 316 F.3d 733, 735–36 (7th Cir.2003)). As in *Brown*, however, because the parties did not brief this issue, "we leave for another day whether notice should be required before the imposition of special conditions." *Id.* In the meantime, we observe that the imposition of a special condition implicating potentially fundamental constitutional interests strongly counsels in favor of notice, not only for the defendant's benefit, but so that the district court may adequately

## II. The Inadequacy of the Record as to the Goals of the Sentencing Condition

Our analysis in this case is complicated by the fact that the record does not clearly reveal the intended purpose of the challenged condition. There is some reason to believe the court designed the condition to protect Myers's child; it discussed the need for probation officers to be able "to speak with the child afterwards" if necessary so that the "visitation and the activities can still be in some fashion monitored for the best interest of that child." But there is also reason to believe the condition was intended to protect other children with whom Myers might come into contact during visits; the court also cited the need for "specific approval for him to be allowed to pick [his child] up at the school ... or to be in the presence [of] other children." Without a clear indication of the condition's purpose, we cannot evaluate whether the condition involves a "greater deprivation of liberty than is reasonably necessary." *See* 18 U.S.C. § 3583(d)(2).

If the condition was designed to protect other children, it is clearly related to a legitimate sentencing goal: "the need to protect the public from further crimes of the defendant." U.S.S.G. § 5D1.3(b)(1)(C). Concern for the safety of other children is entirely reasonable given the defendant's criminal history. Indeed, the defense appears to have conceded as much in the district court, at least with respect to prior authorization for school pick-ups: "I'm not objecting to the idea if his son is at school and he wants to go pick up his son at school, that has to be precleared." School is hardly the only locale, however, at which defendant's unsupervised contact with his own son would likely put him in contact with other children. While picking up or dropping off his son at the residence of his foster family, Myers might encounter other children in that family.[11] And many of the activities that a father might wish to share with a son—visits to parks and playgrounds, ball games, movies, trips to the library—would bring him into contact with other children.

We note that another special condition bars Myers from sites where children are likely to congregate, except on prior approval of his probation officer. Because he does not challenge this condition, we assume that Myers concedes that such a general prohibition reasonably relates to his criminal history and the risk he presents to children. This risk would hardly disappear simply because Myers was accompanied by his young son when their visits took them to sites frequented by other children; indeed, in some circumstances it might increase, by giving Myers a respectable reason for being at the location.

Protection of other children would therefore be a reasonable and well-supported goal of the sentencing condition. As discussed below, however, once a reasonable goal is established, the district court will need to make findings as to whether Myers has any constitutionally protected liberty interest in his relationship with his son, and if so, what deprivation of liberty is necessary to achieve the sentencing goal or goals.

If the goal of the condition, however, was to protect Myers's own son, the dis-

---

"think through" the imposition of a condition that burdens those rights.

11. It is worth noting that, in the past, Myers has taken advantage of a domestic relationship to exploit a child. His first conviction involved his taking sexual advantage of the eight-year-old daughter of his then-girlfriend.

trict court will need to develop a record demonstrating the danger to that child, because we cannot say on the basis of the record before us that such a danger has been demonstrated. According to the record, neither the offense of conviction nor the prior offense as reflected in the PSR involved Myers's own child. Both of Myers's offenses involved girls; the PSR stated that the focus of Myers's pedophilia was an attraction to females. The government offered no evidence to show that Myers's child, a male, was in any danger from his father. The evidence in the record does not show, nor has the district court made adequate findings that explain, how the condition will deter misconduct toward that child if that is indeed its goal. *See Abrar*, 58 F.3d at 46–47 (discussing examples of conditions reasonably related to sentencing goals).[12] Once such a danger is established, it must then be decided whether, in light of the danger to Myers's child, the condition represents a greater deprivation of any cognizable liberty than is reasonably necessary. Whether the purpose of the condition was to protect other children or to protect Myers's son, the district court will need to create a full record to determine whether Myers has any parental rights that trigger due process concerns.

### III. The Inadequacy of the Record as to Whether Myers Possesses a Liberty Interest

■ As discussed above, the Supreme Court has afforded due process protection to parents in making decisions concerning the care, custody, and control of their children. Some measure of due process protection also extends to a non-custodial, biological parent who demonstrates "a full commitment to the responsibilities of parenthood by coming forward to participate in the rearing of his child." *Lehr*, 463 U.S. at 261, 103 S.Ct. 2985 (internal quotation marks omitted). Whether Myers fits this description remains an open question. He conclusorily advises this Court that, until his arrest in this case, he had played an active role in the life of his son, residing with him, the boy's mother, and her other children. But it appears that no evidence in support of this claim was presented either to the Probation Department for inclusion in the family history section of his Pre–Sentence Report or to the district court at the original May 30, 2003 sentencing or at the June 7, 2004 re-sentencing. We cannot determine whether the sentencing condition represented a "greater deprivation of liberty than is reasonably necessary" without knowing whether Myers's relationship with his son is sufficiently established to merit constitutional protection.

The Supreme Court has observed that "[t]he history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children." *Yoder*, 406 U.S. at 232, 92 S.Ct. 1526. Unfortunately, reality sometimes departs from this ideal, and this is one of those sad cases. At the time of Myers's original May 30, 2003 sentencing, the boy in question was not being nurtured by any parent; he was a ward of the State

**12.** We express no opinion as to the nature and quantum of evidence that would suffice to render this condition reasonably related to the relevant sentencing concerns. *Cf. Hobbs v. County of Westchester*, 397 F.3d 133, 139–41 (2d Cir.2005) (recounting evidence submitted to support showing of risk to community posed by convicted pedophile Hobbs as including, *inter alia*, an affidavit and report by an expert who regularly conducted evaluations of sex offenders at the request of probation departments and courts, "possessed special expertise in the evaluation of sex offenders and the risk they present to the community," and who reviewed numerous materials specific to Hobbs before rendering an expert opinion on Hobbs's particular risk of recidivism).

of New York. His father, a diagnosed pedophile, was about to be imprisoned for six and one-half years, and his mother had proven so neglectful of her children's welfare that the state had removed all eight of them from her custody and placed them in foster care. In his pre-sentence interview, Myers stated that he had been *attempting* to obtain visitation rights to his son, but neither at the original sentencing nor at the re-sentencing on June 7, 2004 did the defendant report that any New York court had recognized him to have such a right.

Furthermore, we note that New York State law, in situations where a child is in foster care, prohibits visitation between out-of-wedlock children and a parent whose parental rights have not been adjudicated. *See* N.Y. Fam Ct. Act § 1084. There is nothing in the record before us that indicates whether any such determination pursuant to applicable provisions of state law has been made so as to give defendant rights to visitation. This in turn highlights the near impossibility of predicting the state of affairs several years from now when the defendant is expected to enter into supervised release. Questions such as who will be the child's custodian at the time and which state court will have jurisdiction over him, and thus over the relationship between the child and the defendant, are unresolved. The ultimate resolution of Myers's attempts to gain visitation rights will also be relevant to this inquiry.

Because Myers asserts but does not establish a legally cognizable interest as the parent of a child in foster care born out of wedlock, we cannot determine whether the special condition is appropriately tailored to satisfy the goals of sentencing. If Myers does establish that he has a right to associate with his child, then the district court will need to tailor any sentencing conditions to infringe that right no more

than necessary. We do not decide here whether the imposition of the condition itself represented an abuse of discretion, but it was not within the discretion of the district court to impose it without developing an adequate record to support its validity. We must therefore remand for re-sentencing.

There is, of course, a possibility that, on remand, the district court will learn that the Family Court has not yet conclusively determined Myers's parental rights. Because the defendant will be in custody for some years, the Family Court may well have focused its attention to date on the more immediate problem of whether the boy and his siblings can responsibly be restored to their mother. If Myers's parental rights are, in fact, unresolved in state court, the district court might conclude that it will be necessary to revisit the conditions of supervised release at a later date. The trial court may modify conditions of supervised release at any time pursuant to 18 U.S.C. § 3583(e)(2), *see United States v. Johnson,* 529 U.S. 53, 60, 120 S.Ct. 1114, 146 L.Ed.2d 39 ("The trial court, as it sees fit, may modify an individual's conditions of supervised release."); *see also* Fed.R.Crim.P. 32.1(c) (generally requiring a hearing before modification of conditions). Myers may also move the trial court for a modification of the conditions if circumstances change. *See Johnson,* 529 U.S. at 60, 120 S.Ct. 1114 ("Respondent may invoke § 3583(e)(2) in pursuit of relief."). Facts and relationships may change over the years, and the district court may wish to re-examine the special conditions at a time closer to Myers's release, when more facts will be clear. *See Lifshitz,* 369 F.3d at 193 n. 11 ("Were this, however, a case involving supervised release ..., it might well be prudent for the district court to postpone the determination of supervised release ... conditions until an appropriate

later time, when the district court's decision could be based on then-existing · . . . considerations.").

 We note that, although it would be proper for the district court to *postpone* determining whether a special condition is necessary, the district court may not improperly *delegate* this determination to the probation office. *See Peterson,* 248 F.3d at 85 (2d Cir.2001) ("If [defendant] is required to participate in a mental health intervention only if directed to do so by his probation officer, then this special condition constitutes an impermissible delegation of judicial authority to the probation officer. On the other hand, if the District Court was intending nothing more than to delegate to the probation officer details with respect to the selection and schedule of the program, such delegation was proper." (internal citations omitted)). If it chooses to impose a special condition, the district court itself must answer the questions we have identified: (1) what the goal of the condition is; (2) if the goal is to protect Myers's own child, whether an adequate record can be developed to support it; (3) whatever the goal of the condition, whether Myers has any constitutionally protected right to a relationship with his child; and (4) what terms of the condition are necessary and not a greater deprivation of any identified liberty interests than reasonable to achieve the sentencing goal.[13]

## CONCLUSION

For the foregoing reasons, we VACATE the special condition of supervised release conditioning Myers's contact with his minor son upon approval from the probation office, and REMAND for resentencing consistent with this opinion.

---

**13.** On remand, the parties may wish to address how a special condition relating to Myers's contact with his own child may affect or otherwise interrelate with any state proceedings or orders relating to Myers's custodial or visitation rights. Because "domestic relations law is almost exclusively the province of the states," *Brissett v. Ashcroft,* 363

F.3d 130, 133 (2d Cir.2004), a federal court properly proceeds cautiously in concluding that the responsible supervision of a criminal defendant requires conditions with respect to a parent's access to a child that are different from or in addition to those ordered by a state court.