

Villanova University School of Law
Villanova University School of Law Digital Repository

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-9-2007

# USA v. Roberts

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1371

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Roberts" (2007). 2007 Decisions. Paper 799.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/799

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-1371

_____

UNITED STATES OF AMERICA

v.

STEVEN ROBERTS;
DANIEL MANGINI,
            Appellants

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 04-cr-00037-1, 2)
District Judge:  Honorable Marvin Katz

_____

Argued May 10, 2007

Before:  RENDELL, JORDAN and ALDISERT, Circuit Judges

(Filed:  July 9, 2007)

_____

Mary C. Roper
American Civil Liberties Union of Pennsylvania
P.O. Box 40008
Philadelphia, PA  19106
    *Counsel for Appellant Steven Roberts*

Peter Goldberger     **(ARGUED)**
Law Office of Peter Goldberger
50 Rittenhouse Place
Ardmore, PA  19003-2276
    *Counsel for Appellant Daniel Mangini*

Robert A. Zauzmer     **(ARGUED)**
Emily McKillip
Suite 1250
Office of U.S. Attorney
615 Chestnut Street
Philadelphia, PA  19106
  Counsel for Appellee

---

OPINION OF THE COURT

---

RENDELL, *Circuit Judge*.

Defendants Steven Roberts and Daniel Mangini both pled guilty to conspiracy to possess methamphetamine with intent to distribute and are now serving terms of supervised release.  Both are subject to several standard conditions of supervised release, which include a prohibition on "associat[ing] with any person convicted of a felony, unless granted permission to do so by the probation officer."  App. 54 (Mangini); App. 59 (Roberts).  Both men requested permission to resume contact with one another and were denied by the probation office.  Roberts and Mangini appeal the District Court's denial of their request that the Court "clarify or modify the terms of both men's conditions of release," pursuant to 18 U.S.C. § 3583(e)(2), "to permit them to communicate and associate with one another."  App. 4.

I.

Mangini and Roberts were in a committed relationship for many years prior to their arrest and conviction.  During that time, "they lived together and raised Defendant Roberts' niece as their foster daughter."  *United States v. Roberts*, No. 04-37, slip op. at 2

2

(E.D. Pa. Jan. 24, 2007). Roberts and Mangini were arrested in December 2003 for conspiring to possess methamphetamine and related crimes. They later fled to Florida while on pretrial release and were subsequently recaptured. In May 2004, both pled guilty to conspiracy to possess methamphetamine with intent to distribute, in violation of 21 U.S.C. § 846. Mangini was sentenced to 18 months imprisonment, followed by 5 years supervised release. Roberts was sentenced to 30 months imprisonment, followed by 5 years supervised release. Both men are subject to a prohibition on "associat[ing] with any person convicted of a felony, unless granted permission to do so by the probation officer." App. 54 (Mangini); App. 59 (Roberts). Defendants are both supervised by Probation Officer John Sanderson.

Defendants asked Probation Officer Sanderson for permission to associate with one another after both men were released from custody. Permission was denied. Roberts then wrote directly to Sanderson's supervisor, Charles Donahue, asking for permission for him and Mangini to "see and speak to one another and resume living together based on the fact that we were in a relationship for 18 years prior to our arrest." App. 76-77. Donahue characterized the letter as a request for Roberts to "reside with" Mr. Mangini, and responded that "Mr. Mangini has made it clear to Mr. Sanderson that he does not approve of your request." App. 78.

On December 14, 2006, defendants submitted a letter to the District Court requesting that the Court "clarify or modify the terms of both men's conditions of release," pursuant to 18 U.S.C. § 3583(e)(2), "to permit them to communicate and

3

associate with one another." App. 4. The Court denied the request on December 18, 2006 as to defendant Mangini and on January 4, 2007 as to defendant Roberts. App. 3, 7. On January 4, 2007, defendants filed a motion for reconsideration and filed exhibits in support of the motion, including affidavits from Mangini and Roberts. In his declaration, Mangini expressly stated that Donahue's letter "mischaracterizes what I said. What I told Mr. Sanderson is that right now, my health has to be my highest priority. Before I live with anyone, I have to make sure that living situation will support my efforts to be well, physically and emotionally." App. 70.

In response to a request from the Court for more information about the association of defendants, Probation Officer Sanderson submitted a letter to the Court stating that the probation office denied defendants' request to associate "due to the seriousness of their offense." App. 82. Later in the letter, Sanderson added that "Mangini has become romantically involved with another individual" and that "Mangini informed this officer that he was not interested in resuming a romantic relationship with Mr. Roberts." App. 82. Sanderson concluded that "[d]ue to the above-stated information, it is felt that there is no compelling reason as to why association should be permitted." *Id.* However, he added that the probation office would be "guided by any comments or directives that the Court wishes to offer."

The District Court denied the motion for reconsideration on January 24, 2007, one day after the government's response to defendants' motion was filed. The Court construed defendants' motion for reconsideration as raising three arguments for

4

modifying or terminating the terms or conditions of their supervised release. It then went on to reject each of defendants' arguments.

The District Court understood defendants' motion to raise a facial challenge to the anti-association condition under 18 U.S.C. § 3583(d) and under the due process clause of the Fifth Amendment. The Court concluded that the condition satisfies the statutory requirements of § 3583(d) because it is designed to protect the public from further crimes and the restrictive effect of the condition "is mitigated by the fact that the probation officer can permit Defendants to have contact with convicted felons if he deems it appropriate." *Roberts*, No. 04-37, slip op. at 6. In its analysis, the Court did not consider Probation Officer Sanderson's alleged admission that, in his opinion, defendants' association would not endanger the public or lead them to commit further crimes. The Court ignored this alleged statement because it treated defendants' request as a facial challenge to the validity of the condition, rather than as a challenge to the enforcement of the condition by the probation office. *Id.* at 6 n.2.

The Court also found that the condition does not violate defendants' due process rights because it is directly related to protecting the public and is narrowly tailored. *Id.* at 9 (quoting two-part test from *United States v. Crandon*, 173 F.3d 122, 128 (3d Cir. 1999) to determine validity of a special condition that restricts constitutional rights). The Court noted that the condition "is narrowly tailored, because, aside from the fact that it permits Defendants to associate with those convicted of non-felony offenses, its prohibition is not absolute. Defendants may associate with each other if their probation officer permits it."

5

*Id*. at 9-10.

The Court did treat defendants' argument that the enforcement of the condition violates their Fifth Amendment right to equal protection as a challenge to the *enforcement* of the anti-association condition, rather than as a facial challenge. The Court found, however, that it lacked jurisdiction under 18 U.S.C. § 3583(e) to modify the anti-association condition on the ground that it is being unconstitutionally enforced. *Id*. at 10. The Court concluded that "[d]efendants' equal protection claim, if any, lies against the Probation Office in a separate action." *Id*. at 11**.**

Following the denial of their request and denial of their motion for reconsideration, defendants appealed. They also filed supplemental declarations with the District Court that contain the testimony defendants would have given if the Court had held an evidentiary hearing prior to the denial of their request. Roberts attested that "I still consider Daniel [Mangini] my life partner, and want to be reunited with him." App. 93. Mangini echoed this sentiment. App. 94 ("Although Steven [Roberts] and I have been separated for several years, I still consider him to be my partner. Contrary to Mr. Sanderson's statements, I am eager to resume my relationship with Steven and I do not have a new partner.").

During the pendency of this appeal, Probation Officer Sanderson has continued to deny defendants permission to have contact with one another. Moreover, the probation office at present reads the District Court's order as mandating that defendants not be granted permission to associate with one another except under extraordinary

circumstances, even though the order suggests nothing of the kind. The probation office has stated that it will not make any determination regarding contact between defendants without further proceedings before the District Court.

### III.

The District Court had jurisdiction over defendants' case pursuant to 18 U.S.C. § 3231. We have jurisdiction over the District Court's order denying defendants' request for modification of a condition of their supervised release pursuant to 28 U.S.C. § 1291. "To the extent we are reviewing the District Court's denial of [the] motion to reconsider, our review is plenary where the denial was based on 'the interpretation and application of a legal precept.'" *United States v. Smith*, 445 F.3d 713, 716 (3d Cir. 2006) (quoting *Koshatka v. Phila. Newspapers, Inc.,* 762 F.2d 329, 333 (3d Cir.1985)). "Otherwise, we review such denials for abuse of discretion." *Id.*

Following oral argument, and at the urging of this Court, the parties have clarified and agreed upon certain facts regarding defendants' relationship: "All parties now agree and accept that Mr. Mangini and Mr. Roberts have been for over twenty years and remain, despite the separation that resulted from their incarceration, committed life partners." Joint Letter (May 21, 2007) at 2. Furthermore, both sides agree that the District Court's order should be vacated and the matter should be remanded to the District Court for further proceedings in light of this agreed factual predicate. However, they disagree as to the extent of the guidance we should give to the District Court as to these proceedings.

7

Defendants argue that the District Court's denial of their request was colored by two errors of law and request that we correct those errors on appeal. First, they argue that the District Court erred in ruling that it lacked jurisdiction under § 3583(e)(2) to consider the defendants' request for modification of the conditions of their release on the ground that the anti-association condition, as enforced by the probation office, violates their right to equal protection. Second, they urge that the Court erred in considering defendants' request for modification as a facial challenge to the validity of the condition, rather than as a challenge to its enforcement by the probation office.

The District Court's conclusion that it had no jurisdiction under § 3583(e) to consider defendants' request for clarification or modification on the ground that the anti-association condition, as applied, violated their right to equal protection effectively terminated review of this constitutional claim. In addition, the Court's treatment of defendants' request for modification as a facial challenge to the anti-association condition under § 3583(d) and the due process clause, rather than a request for a clarification of how it may be applied by the probation office, also colored the Court's review of these claims. We think it appropriate to review these rulings on appeal because the District Court's misunderstanding of defendants' request and of the scope of its jurisdiction, if left uncorrected, would result in the Court again denying defendants' request for clarification on jurisdictional grounds and/or continuing to misconstrue defendants' argument on remand as a facial challenge to the anti-association condition.

A. Authority Under § 3583(e)(2)

8

The District Court ruled that under 18 U.S.C. § 3583(e),[1] which governs requests for modifications of conditions of supervised release, it lacked "jurisdiction" to modify the conditions of defendants' supervised release on the grounds that they are unconstitutional, citing *United States v. Myers*, 426 F.3d 117, 123 (2d Cir. 2005). *Roberts*, No. 04-37, slip op. at 10. In *Myers*, which was a direct appeal of a sentence, rather than a motion to modify under § 3583, the court addressed whether it should wait to adjudicate the defendant's challenge to the legality of a condition of his supervised release until after the defendant was released from custody. The Court found that it was appropriate to adjudicate defendant's challenge on appeal because the defendant would not be able to raise the challenge to the constitutionality of the condition, that the probation office preapprove his visits with his minor child, through a subsequent motion under 18 U.S.C. § 3583(e)(2). *Id.* at 123.

*Myers* involved a facial challenge to a condition of release, rather than a challenge to the application of the condition or interpretation of the meaning of the condition by the probation office. The other cases cited by the District Court all likewise involved facial challenges to conditions of release, rather than challenges to the way that the conditions

---

[1]Section 3583(e)(2) provides that: "The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)--(2) extend a term of supervised release if less than the maximum authorized term was previously imposed, and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision."

9

were interpreted or enforced. *See United States v. Gross*, 307 F.3d 1043, 1044 (9th Cir. 2002) (facial challenge to condition of release on grounds of illegality could not be considered under § 3583); *United States v. Hatten*, 167 F.3d 884, 886 (5th Cir. 1999) (same); *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997) (court did not have jurisdiction under § 3583 to rescind restitution order on the grounds that the order is illegal on its face); *see also United States v. Smith*, 445 F.3d 713, 717 (3d Cir. 2006) (cited by District Court because it cites *Lussier*); *United States v. Alevras*, 114 Fed. Appx. 488, 489 (3d Cir. 2004) (same).

In contrast, Roberts and Mangini presented the District Court with a true request for modification or "clarification," rather than an impermissible attempt to use § 3583(e)(2) "as a backdoor to challenge the legality of [their] sentence." *Gross*, 307 F.3d at 1044. The District Court had grounds for modification under § 3583(e)(2) because the request was premised on "new or unforeseen circumstances," namely, the probation office's refusal to grant defendants' requests to see one another despite their longstanding intimate relationship. *See Smith*, 445 F.3d at 717 (noting that "new or unforeseen circumstances" permit a court to modify conditions of release under § 3583(e)).[2] We will

---

[2]Arguably, defendants could have attempted to challenge the anti-association provision on direct appeal, like the defendant in *United States v. Loy*, 237 F.3d 251 (3d Cir. 2000). On direct appeal, Loy challenged the condition of his supervised release that restricted his contact with minors, on the ground that it would inhibit his ability to have and raise his own children. The *Loy* court found that, although the condition could arguably be read to extend to Loy's own children, the court would construe the condition not to extend to any children that Loy might father after his release from prison. *Id.* at 270. If Loy were to father any children following his release from custody, the District

10

therefore instruct the District Court that it has the authority on remand, under § 3583, to clarify how the probation office may apply the anti-association condition of defendants' supervised release.

B.  The Nature of Defendants' Request for Clarification

The District Court treated defendants' request for modification or clarification of the anti-association condition of their release as a facial challenge to the condition on the grounds that the condition fails to satisfy the requirements of 18 U.S.C. § 3583(d) and violates their substantive due process rights.  The Court focused only on the language of the condition of release, not its application by the probation office.[3]  However, defendants

---

Court then could consider modification to the condition in the event that it wished to restrict Loy's interaction with those children.  *Id.*  However, even though the *Loy* court considered the challenge on direct appeal, the court did not suggest that *Loy* could not have brought a motion for modification or clarification of the condition later, at such time that Loy had children and the district court construed the provision to restrict his interaction with those children.

[3]In fact, the Court noted that, although it understood defendants' "frustration with the probation officer's refusal of permission for them to associate with each other when he allegedly has admitted that such association would not, in his opinion, endanger the public or lead them to commit further crimes," "18 U.S.C. § 3583(d) does not accord the probation office's opinion any weight." *Roberts*, No. 04-37, slip op. at 6 n.2. The Court then went on to apply the § 3583(d) requirements to the condition as written, rather than to the condition as applied by the probation office.  *Id.* at 6-7.  Similarly, in analyzing defendants' due process claim, the Court looked only at the condition as written, noting that the condition is narrowly tailored because "its prohibition is not absolute. Defendants may associate with each other if their probation officer permits it." *Id.* at 9-10.  The Court ignored the central problem: that the probation office was allegedly *applying* the condition so as to create an absolute bar on defendants' contact with one another and without consideration of the requirement under § 3583(d)(2) that the condition "involve[] no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D)."

11

clearly stated in their motion to the Court that they were not seeking elimination of the prohibition against association with felons absent permission from the probation office, but were merely asking the Court to correct the probation office's failure to grant them permission to see one another. Defendants argued that the condition, *as applied* by the probation office, does not meet the requirements of 18 U.S.C. § 3583(d) and that the probation office's refusal of permission for defendants to associate renders an otherwise permissible condition of release unconstitutional. App. 65-66.

Although § 3583(e) cannot be used as a backdoor to challenge the legality of a condition of release, it may be used to challenge the arbitrary or unfair application of a condition of release by the probation office. *See United States v. Mickelson*, 433 F.3d 1050, 1057 (8th Cir. 2006) (rejecting facial challenge to condition restricting defendant's contact with minors without written permission of the probation office, but adding that "if such permission is arbitrarily or unfairly denied, [defendant] is free to seek relief from the district court under § 3583(e)"); *United States v. Bowman*, 175 Fed. Appx. 834, 838 (9th Cir. 2006) (finding that condition of release delegating authority to probation officer to recommend whether or not defendant should have unsupervised visits with grandson was permissible because delegation was limited and "if the probation officer arbitrarily or unfairly denies [defendant] a favorable recommendation, [defendant] is free to seek relief from the district court under 18 U.S.C. § 3583(e)(1)").[4] This is exactly what defendants

---

[4]We recognize that this court of appeals opinion was not issued as precedent and, as such, it is not authority for the proposition noted. However, it reflects the view of

12

seek to do in this case, as the government acknowledges in its brief. Appellee Br. 18-19.[5]

As the *Mickelson* court observed, even though a court delegates authority to construe a condition of release to the probation office, the court nevertheless retains the ultimate responsibility for reviewing the exercise of that authority. *Id.* at 1056 ("Conditions delegating limited authority to non judicial officials such as probation officers are permissible so long as the delegating judicial officer retains and exercises ultimate responsibility."). Here, the District Court treated defendants' request for clarification as a facial challenge to the condition, rather than as a request to prevent the probation office from construing the condition in a way that the defendants view as violating their rights. The Court, thus, avoided addressing the actual issue presented by defendants' request for clarification.

We therefore instruct the District Court on remand to address defendants' actual request, which is for modification or clarification of the proper application of the anti-association condition, in light of the probation office's allegedly unlawful exercise of its discretion in a manner that violates 18 U.S.C. § 3583(d)(2) and defendants' constitutional

---

another court consistent with ours, and we cite it to demonstrate that our view is not novel or unique.

[5]The government notes in its brief that "in this proceeding the appellants do 'not question the legality of forbidding them generally from associating with convicted felons except as authorized by the probation officer.' [Blue] Br. 22. They assert that 'to the extent that the district court may have thought that the defendants were challenging the validity of Standard Condition 9 as a general matter or on its face, that notion was mistaken.'" Appellee Br. 18-19.

rights.[6]

IV.

For the reasons set forth above, we will vacate the order of the District Court denying defendants' request and remand for the Court to consider defendants' challenge to the probation office's application of the anti-association condition.

_____

[6]We take no position as to whether the standard set forth in *United States v. Loy*, 237 F.3d 251, 256 (3d Cir. 2001), is implicated here, leaving that determination for the District Court in the first instance.

JORDAN, *Circuit Judge*, concurring.

I concur in the opinion and judgment in this case and write separately simply to emphasize what I believe to be implicit in our decision, namely that we are not directing the District Court to address the defendants' constitutional arguments if the parties' dispute can be resolved on other grounds. Long-standing and sound jurisprudential practice dictates that decisions be made on the narrowest grounds available and that constitutional issues be avoided whenever possible. *Cf. Clark v. Martinez*, 543 U.S. 371, 381 (2005) ("The canon [of constitutional avoidance in statutory interpretation] is not a method of adjudicating constitutional questions by other means. Indeed, one of the canon's chief justifications is that it allows courts to *avoid* the decision of constitutional questions." (Original emphasis; internal citations omitted.)) While I do not understand our direction to the District Court on remand to be at odds with that practice, I would not want any ambiguity to be perceived on this point.

_____