20-2024
*United States v. Northup*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of May, two thousand twenty-one.

PRESENT:
        BARRINGTON D. PARKER,
        SUSAN L. CARNEY,
        STEVEN J. MENASHI,
                *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

        *Appellee,*

          v.                            No. 20-2024

BRIAN NORTHUP,

        *Defendant-Appellant.*

_____

| | |
|---|---|
| FOR DEFENDANT-APPELLANT: | James P. Egan, Federal Public Defender's Office, Syracuse, NY. |
| FOR APPELLEE: | Carina H. Schoenberger, Assistant United States Attorney, *for* Antoinette T. Bacon, Acting United States Attorney for the Northern District of New York, Syracuse, NY. |

Appeal from the judgment of the United States District Court for the Northern District of New York (D'Agostino, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on June 18, 2020, is **AFFIRMED**.

Defendant-Appellant Brian Northup appeals from a criminal judgment imposing on him special conditions of supervised release. In 2020, Northup was sentenced to 42 months' imprisonment and a ten-year term of supervised release after he pled guilty to three counts of access with intent to view child pornography. Northup challenges four special conditions of supervised release: three conditions that prohibit him, respectively, from having direct contact with minors, going to any place where minors are likely to congregate, and going to any place with the primary purpose of observing or contacting minors (Special Conditions 2, 3, and 4). These conditions have the effect of restricting Northup's contact with his daughter. The fourth challenged condition prohibits Northup from viewing or possessing any material depicting "sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), until he has undergone a "psychosexual evaluation" (Special Condition 9). App'x at 124. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

We review the District Court's imposition of supervised release conditions for abuse of discretion. *United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016). A special condition is proper if it "(1) is reasonably related to the factors set forth in [18 U.S.C. §] 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D); (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)." 18 U.S.C. § 3583(d). "If a special condition implicates a fundamental liberty interest, we must carefully examine it to determine . . . [that] our application of these criteria . . . reflect[s] the heightened constitutional concerns. If the liberty interest at stake is fundamental, a deprivation of that liberty is 'reasonably necessary' only if the deprivation is narrowly tailored to serve a compelling government interest." *United States v. Myers*, 426 F.3d 117, 126 (2d Cir. 2005).

With respect to Special Conditions 2, 3, and 4, Northup argues that they unlawfully infringe his fundamental right as a parent to associate with his daughter, who was age three at the time of sentencing. *See Wilkinson v. Russell*, 182 F.3d 89, 104 (2d Cir. 1999) (parents have a "fundamental

2

liberty interest . . . in the care, custody, and management of their child" protected under constitutional due process). We are sensitive to the importance of Northup's parental rights and recognize that they may not be burdened absent a careful and well-supported analysis that the imposed conditions are necessary. Applying this heightened scrutiny, we conclude that the District Court did not abuse its discretion in imposing the conditions, which reflected a careful balance of Northup's fundamental rights against the necessary protection of his daughter and other minors. *See Myers*, 426 F.3d at 125 ("Although parents enjoy a constitutionally protected interest in their family integrity, this interest is counterbalanced by the compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves.").

The District Court first carefully explained that the conditions "reasonably related" to the § 3553(a) sentencing factors, 18 U.S.C. §§ 3583(d), namely "the nature and circumstances of the offense" and Northup's "history" of endangering children and his own daughter. 18 U.S.C. § 3553(a). With respect to the instant offense, the record suggested that Northup had a "sexual interest in minors," where he had "accessed child pornography depicting prepubescent children," including a female toddler and girls appearing to be around ages five to seven. App'x at 105; Presentence Investigation Report ("PSR") ¶¶ 17, 19. Furthermore, the District Court noted that, in prior court proceedings, Northup had been deemed a threat to children. In 2017, he was convicted of physically abusing a three-year-old boy "in his care," and from 2017 to the present, Northrup was subject to eight different "orders of protection" with respect to that boy, Northup's daughter, and the mother of both the boy and his daughter. App'x at 105; PSR ¶ 49. The District Court observed that, when Northup is released from prison, his daughter will be "between four and five" years old, App'x at 104, an age similar to that of the boy whom Northup physically abused and the young children in the pornography that he consumed.

The conditions furthermore are narrowly tailored to the compelling governmental interests of protecting the safety of minors and supporting Northup's rehabilitation. *See Myers*, 426 F.3d at 125 (recognizing the "compelling governmental interest in the protection of minor children" especially where parents themselves pose the risk). The conditions are not absolute. They remain in place until Northup has "undergone a psychosexual evaluation," and the District Court has an opportunity to consider the "treatment provider['s]" "recommendation" on whether Northup may

3

safely interact with children.[1] App'x at 124; *see also* App'x at 106 (noting that, with respect to all three conditions, the District Court may reconsider them when Northrup "has been properly evaluated" and a "treatment provider . . . recommends" that he may safely have contact with children). At sentencing, the District Court emphasized that, while it "err[s] on the side of caution to protect" Northrup's daughter based on the current record, it was "quite certain" that it would "allow [Northup] to be around his daughter" if he received acceptable results in the psychosexual evaluation and was not subject to any relevant "order of protection." App'x at 104. And, even before these conditions are modified, Northup may seek "permission [from] the probation officer" to have contact with his daughter. App'x at 124. Contrary to Northup's argument, we are confident, based on the record, that the District Court does not intend to delegate its decision-making authority to the psychosexual evaluator. *See United States v. Matta*, 777 F.3d 116, 122 (2d Cir. 2015) ("The power to impose special conditions of supervised release . . . is vested exclusively in the district court.").

We also affirm the imposition of Special Condition 9, which prohibits Northup from possessing or viewing any sexually explicit material until he has "undergone a psychosexual evaluation and such is recommended by the treatment provider." App'x at 124. Although "[p]ornographic materials receive full First Amendment protection when in the possession of ordinary adults, [they] may be regulated in the hands of parolees to a much greater extent," so long as the court explains "the need for th[e] condition" as "supported on the record." *United States v. Eaglin*, 913 F.3d 88, 99 (2d Cir. 2019) (alteration omitted).

---

[1] Psychosexual evaluations, conducted by licensed clinical and psychological professionals, are commonly relied on by courts in this Circuit at sentencing, to assess the risks posed by defendants whose offenses involve sexual deviancy. *See, e.g., United Staves v. Thomas*, 827 F. App'x 72, 74 (2d Cir. 2020) (upholding condition of supervised release requiring defendant to undergo "psychosexual evaluation," where instant offense did not involve sexual acts, but where defendant had a demonstrated "history of sexual abuse"); *United States v. McCaulley*, 2020 WL 830849, at *3 (E.D.N.Y. Feb. 20, 2020) (in sentencing child pornography offender, relying significantly on findings in a "Psycho-Sexual Evaluation," conducted by doctor at the "New York Center for Neuropsychology and Forensic Behavioral Science," which concluded that the defendant was not "sexually attracted to minors"); *United States v. Tanasi*, No. 2003 WL 328303, at *1 (S.D.N.Y. Feb. 11, 2003) (following guilty plea for child pornography offense, "[b]ecause the offense involved sexual deviancy," referring defendant "for a psychosexual evaluation in order to assess his psychologic functioning and to determine from a clinical perspective whether or not he poses a risk to the community").

In Northup's case, the condition is "reasonably related" to the protection of public safety and the promotion of his rehabilitation. *See* 18 U.S.C. § 3583(d). At sentencing, the District Court explained that Northup's "offense was facilitated . . . by the use of internet capable devices to access child pornography on the dark web." App'x at 110. It therefore found that "allowing the defendant to view any form of pornography during the term of supervised release may lead to high risk behavior, including potential victimization of minors, as he has demonstrated poor impulse control, a known risk factor for recidivism by sexual offenders." App'x at 110. The record supports this account: Northup admitted that he did not initially seek out child pornography with "specific search terms." PSR ¶ 25. Rather, in his "anonymous browsing" of websites with explicit content, such as "4Chan," he came across "link[s]" to child pornography hosted on the illegal "Dark Web" site "Playpen." PSR ¶¶ 3(f)(iii), 9, 25. The pornography Northup consumed involved both adults and children, and he took and saved to his computer sexually explicit photographs of a young adult female. PSR ¶¶ 3, 26. Northup also attempted to evade law enforcement. He took pains to delete from his computer all traces of the child pornography that he viewed, admitted that he accessed Playpen using an identity-encrypting network to "avoid law enforcement," and denied to Probation that he was ever interested in young children despite strong evidence to the contrary. PSR ¶¶ 3(f)(iv), 10, 22-23; App'x at 105 (the District Court finding that Northup's "deni[al of] sexual interest in the children during the presentence interview . . . [was] belied by his conduct in this case"). In view of all these facts, the District Court did not abuse its discretion in concluding that Northup's exposure to sexually explicit materials, such as those hosted on websites that provide an indirect path to child pornography, puts him at risk of reengaging in the same pattern of behavior. The condition is also narrowly tailored, as it may be "modified as needed or removed" depending on the results of a psychosexual evaluation. App'x at 110.

* * *

For the foregoing reasons, the District Court's order is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

5