UNITED STATES of America, Appellee,

v.

Kenneth Avery BROWN, Defendant–Appellant.

Docket No. 04–3137–CR.

United States Court of Appeals, Second Circuit.

Argued: Feb. 9, 2005.

Decided: March 22, 2005.

Timothy W. Hoover, Federal Public Defender's Office, Buffalo, NY, for Defendant–Appellant.

Joseph M. Guerra III, Assistant United States Attorney, for Michael A. Battle, United States Attorney for the Western District of New York, Buffalo, NY, for Appellee.

Before: McLAUGHLIN and SOTOMAYOR, Circuit Judges, and CEDARBAUM, District Judge.*

* The Honorable Miriam Goldman Cedarbaum, United States District Judge for the Southern District of New York, sitting by designation.

MCLAUGHLIN, Circuit Judge.

Kenneth Avery Brown appeals from a sentence entered in the United States District Court for the Western District of New York (Skretny, *J.*).

Brown pled guilty to one count of possession with intent to distribute and distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). The court sentenced Brown to seventy months' imprisonment, followed by five years' supervised release. As part of Brown's term of supervised release, the court imposed several special conditions.

On appeal, Brown challenges two of these special conditions. Special condition four ("Condition 4")requires Brown to provide the Probation Office with access to any requested personal and business financial information. Special condition five ("Condition 5") prohibits Brown from incurring any form of debt without obtaining the prior approval of the Probation Office.

We conclude that the district court did not abuse its discretion by imposing Condition 4, but that Condition 5 is an abuse of discretion. Based on the current record, we therefore affirm Condition 4, vacate Condition 5, and remand for resentencing consistent with this opinion.

## BACKGROUND

On two instances in March 2002, Brown sold cocaine base to a Government informant. At the time of these sales, Brown was on probation as a result of a prior New York state conviction for felony drug charges. In April 2002, he was charged in the Western District of New York with distributing cocaine base. Shortly thereafter, Brown fled probation supervision, and he was not arrested until March 2003.

In November 2003, Brown pled guilty to one count of possession with intent to distribute and distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).

The Probation Office prepared a Presentence Report ("PSR") in advance of Brown's sentencing. It revealed Brown's extensive history of drug-related arrests and convictions. In 1995, at the age of 16, he was found with a "small quantity of crack cocaine" that was "packaged for sale." In 1997, he was arrested on felony drug charges and was ultimately convicted of the misdemeanor of criminal possession of a controlled substance. In 1998, Brown "possessed 83 bags of crack cocaine packaged for sale." In 2001, he pled guilty to a felony drug charge after police officers discovered "24 individuals bags of crack cocaine within a large bag of crack cocaine" in his possession. In 2003, when he was apprehended, Brown possessed twenty-six bags of crack cocaine, which he intended to sell. In sum, at age twenty-five, Brown's record included at least five drug-related arrests.

The PSR assigned Brown a Criminal History Category of IV based on his prior offenses. The PSR also documented Brown's addiction to marijuana, indigent status, and employment history between 1996 and 2001, which was sparse, sporadic, and could not be verified. The PSR did not recommend any proposed special conditions of supervised release. In their presentencing submissions, the Government did not move to impose any special conditions, and Brown did not object to the PSR.

In May 2004, Brown was sentenced at the lowest end of the Sentencing Guidelines to a term of *seventy months'* imprisonment, followed by five years' supervised release. Considering Brown's indigence, the district court did not impose a fine or restitution. The court *did* impose a mandatory $100 special assessment, to be paid

through the Bureau of Prisons' Inmate Financial Responsibility Program.

In addition to the usual general conditions, the district court added five special conditions to Brown's five-year term of supervised release. These special conditions required Brown to: (1) submit to drug testing and attend a rehabilitation program; (2) "submit to a search of his person, property, vehicle, place of residence or any other property under his control and permit confiscation of any evidence or contraband discovered"; (3) "obtain and maintain gainful employment"; (4) provide the Probation Office "with access to any requested personal and/or business financial information"; *and* (5) obtain approval from the Probation Office before incurring "any form of debt, including, but not limited to, use of existing credit cards, new credit cards, lines of credit, mortgages or private loans." The court did not give Brown, or the Government for that matter, any notice that it was considering these special conditions.

After the sentence was announced, Brown objected to Conditions 4 and 5, arguing that these conditions are proper only in cases where the sentence includes a fine or restitution. To the extent the court was concerned with Brown's payment of the special assessment, Brown asked the court to modify Conditions 4 and 5 so that they would end upon payment of the $100. (Presumably this payment would occur before his release from prison.)

In response to Brown's objection, the Probation Officer who completed the PSR defended Conditions 4 and 5, saying:

> Well, your Honor, I agree that [Conditions 4 and 5 are] often imposed in conjunction with a fine and restitution,

however, especially with a defendant like Mr. Brown who's got a pretty long history of selling controlled substances, being able to monitor his financial situation is a helpful supervision tool.

The Government agreed that Conditions 4 and 5 would be "a way to sort of monitor how Mr. Brown is supporting himself, where his money is coming from." The Government added that the conditions went "hand-in-hand" with the court's other special condition that Brown maintain lawful employment.

The district court ultimately imposed all the special conditions, including Conditions 4 and 5. The court indicated, however, that if, over the course of the supervised release, any of the special conditions became unnecessary, Brown could seek mitigation of those provisions.

This appeal followed.

## DISCUSSION

■ Brown does not contest his conviction or the length of his sentence.[1] Instead, he limits his appeal to Conditions 4 and 5 of his supervised release. We review the propriety of a supervised release condition for abuse of discretion. *United States v. Ismail*, 219 F.3d 76, 78 (2d Cir. 2000) (*per curiam*).

■ Special conditions of supervised release must be "reasonably related" to: (A) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (B) "the need for the sentence imposed to afford adequate deterrence to criminal conduct"; (C) the protection of the public; and (D) the rehabilitative and medical care needs of the

---

1. After oral argument, we asked Brown if he is seeking a remand for consideration of whether he should be resentenced in light of *United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and *United States v. Crosby,* 397 F.3d 103 (2d Cir.2005). Brown responded in the negative.

defendant. U.S.S.G. § 5D1.3(b)(1); *accord* 18 U.S.C. §§ 3583(d)(1) & 3553(a); *United States v. Germosen*, 139 F.3d 120, 131 (2d Cir.1998). Despite the use of the conjunctive in the Guidelines, "a condition may be imposed if it is reasonably related to any one or more of the specified factors." *United States v. Amer*, 110 F.3d 873, 883 (2d Cir.1997) (internal quotation marks omitted).

█ A special condition must also involve "no greater deprivation of liberty than is reasonably necessary for the purposes" of sentencing, and it must be "consistent with any pertinent policy statements" in the Guidelines. 18 U.S.C. § 3583(d)(2), (3); U.S.S.G. § 5D1.3(b)(2); *United States v. Balon*, 384 F.3d 38, 42 (2d Cir.2004). Accordingly, the district court's "broad discretion in tailoring conditions of supervised release to meet the specific circumstances of a given case" is not "untrammelled," *Germosen*, 139 F.3d at 131 (internal quotation marks omitted), and we must "carefully scrutinize unusual and severe conditions," *United States v. Sofsky*, 287 F.3d 122, 126 (2d Cir.2002) (internal quotation marks omitted).

### A. *Condition 4*

█ Condition 4 requires Brown to provide the Probation Office "with access to any requested personal and/or business financial information." Brown argues that this financial disclosure requirement is: (1) inconsistent with policy statements in the Guidelines; (2) not reasonably related to his offense and circumstances; and (3) a greater deprivation of his liberty than is reasonably necessary. We disagree.

█ As to Brown's first argument, it is true that we generally have affirmed special conditions mandating access to financial information only in cases where the sentence included a fine or restitution. *See, e.g., Germosen*, 139 F.3d at 131–32.

Indeed, the Guidelines recommend a financial disclosure special condition where the court imposes a fine or restitution. U.S.S.G. § 5D1.3(d)(3), p.s. By its own terms, however, this policy statement does not preclude a court from requiring financial disclosure in other "appropriate" situations. *Id.* § 5D1.3(d), p.s.

While we have not previously considered the propriety of a financial disclosure special condition where the defendant is not subject to a fine or restitution, other circuits have upheld special conditions similar to Condition 4 in the absence of a fine or restitution. *See United States v. Meléndez–Santana*, 353 F.3d 93, 106–07 (1st Cir. 2003); *United States v. Behler*, 187 F.3d 772, 780 (8th Cir.1999). These courts reasoned that monitoring an offender's finances deters the offender from returning to a life of crime by forcing him to account for his income. *See Meléndez–Santana*, 353 F.3d at 107; *Behler*, 187 F.3d at 780. We see no reason to deviate from our sister circuits where, given this particular defendant's personal characteristics and history, the financial disclosure requirement is an effective monitoring—and hence deterring—device.

Brown's criminal record and sparse employment history demonstrate his pronounced proclivity to support himself through drug dealing. In light of his history, the Probation Office needs effective monitoring tools to ensure that Brown does not return to drug dealing after his release from prison. Thus, contrary to Brown's second argument—that Condition 4 is not related to his offense and characteristics—the condition stems directly from his criminal and employment history. Relatedly, monitoring Brown's finances will also serve to protect the public from "further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C).

Finally, we are unconvinced by Brown's third argument that Condition 4 is a greater deprivation of his liberty than reasonably necessary. The district court did not authorize a "massive invasion of financial privacy"; it tailored the financial disclosure condition to the facts of this case involving a drug-dealer defendant dependent on his criminal ways for his economic livelihood. *Cf. Balon*, 384 F.3d at 44 (noting that an "offender on supervised release has a diminished expectation of privacy" (internal quotation marks omitted)).

We therefore affirm the district court's imposition of Condition 4.

### B. *Condition 5*

█ Condition 5 prohibits Brown from incurring *any* debt, including the use of existing credit cards or private loans, without obtaining prior approval from the Probation Office. Brown renews the arguments he made against Condition 4. On the record before us, we conclude that Condition 5 is not reasonably related to the factors courts must consider when imposing special conditions and is a greater deprivation of liberty than is reasonably necessary.

Similar to Condition 4, the Guidelines recommend a special condition barring debt accumulation where the defendant is subject to a fine or restitution, U.S.S.G. § 5D1.3(d)(2), p.s., or when otherwise "appropriate." *Id.* § 5D1.3(d), p.s. In light of the allowance for "appropriate" cases, Condition 5 is not inherently inconsistent with the Guidelines.

The relationship between Condition 5 and the factors courts must consider when imposing special conditions, however, is not readily apparent. Brown's offense did not involve the incursion of debt, nor is his debt, as reflected in the PSR, unusually large. Thus, a ban on debt is seemingly unrelated to Brown's offense and circumstances. *Cf. United States v. Peppe*, 80 F.3d 19, 23 (1st Cir. 1996) (holding that a bar on incurring debt without prior approval was reasonably related to defendant's offense, which involved the extortionate extension of credit, and would assist the Probation Office in monitoring defendant's compliance with the fine included in his sentence).

Nor does Condition 5 relate to the other factors courts consider. Nothing in the record suggests that a total ban on debt accumulation, absent Probation Office approval, will deter criminal conduct, protect the public, or assist in Brown's rehabilitation. *See* U.S.S.G. § 5D1.3(b). Whereas we are convinced that monitoring Brown's finances will assist in deterring him from returning to criminal conduct by forcing him to account for his income, the Government has not shown how barring debt deters criminal conduct in this case.

The only argument the Government has mustered that specifically relates to Condition 5 is that the condition will "guard against a circumstance, *i.e.*, the incurrence of debt, which might make [Brown] susceptible to relapse into criminal conduct." Were we to rely on this ground based on the record in this case, however, a bar on debt accumulation would be appropriate in almost any case.

Even if we found that barring debt is reasonably related to the relevant factors, condition 5 has another fatal flaw: it is a greater deprivation of Brown's liberty than is reasonably necessary. Given Brown's indigence, the limited use of credit cards or other forms of credit will likely be necessary to facilitate his reintegration into society after his release from prison. *Cf. United States v. Peterson*, 248 F.3d 79, 83 (2d Cir.2001) (*per curiam*) (vacating a special condition imposing restrictions on computer ownership because, in part,

"[c]omputers and Internet access have become virtually indispensable in the modern world of communications and information gathering"). While it is appropriate for the Probation Office to monitor Brown's debt, a total bar on debt accumulation in this case is not reasonably tailored to that need.

We note the possibility that the record may not have been fully developed below because neither Brown nor the Government received notice of Condition 5 before sentencing.

Other circuits have held that defendants are sometimes entitled to notice in advance of sentencing that the district court is considering special conditions.[2] *See, e.g., United States v. Wise,* 391 F.3d 1027, 1032–33 (9th Cir.2004) (requiring notice before imposition of a special condition that effectively requires defendant to relinquish custody of her children); *United States v. Scott,* 316 F.3d 733, 735–36 (7th Cir.2003) (stating that notice is required before the imposition of "out of the ordinary, and thus unexpected" special conditions). These cases, however, have generally held that notice is required only when the contemplated special condition is not one of the discretionary conditions included in the Guidelines. *Wise,* 391 F.3d at 1033; *see United States v. Barajas,* 331 F.3d 1141, 1144–45 (10th Cir.2003). As noted *supra,* a bar on debt without prior approval is a discretionary special condition under the Guidelines. U.S.S.G. § 5D1.3(d)(2), p.s. Because the parties did not brief this issue, we leave for another day whether notice should be required before the imposition of special conditions.

Because Condition 5 is not properly tailored to the record in this case, we vacate Condition 5. On remand, the district court may invite the parties to further develop the record to support and oppose the imposition of Condition 5, enter a more tailored condition regarding debt accumulation, or drop the condition entirely.

### CONCLUSION

For the foregoing reasons, we affirm Condition 4, vacate Condition 5, and remand for resentencing consistent with this opinion.

---

**2.** At oral argument, Brown's counsel highlighted this issue but conceded that the issue was not addressed in the briefs and is therefore waived.