21-956-pr
*Peoples v. Leon, et al.*

# In the
# United States Court of Appeals
## For the Second Circuit

_____

August Term, 2021

(Argued:  March 30, 2022    Decided:  March 20, 2023)

Docket No. 21-956-pr

_____

LEROY PEOPLES,

*Plaintiff-Appellee,*

–v.–

GINA R. LEON, OFFENDER REHABILITATION COORDINATOR/ORC; CLINTON
CORRECTIONAL FACILITY, ELLEN E. ALEXANDER, BOARD OF PAROLE/COMMUNITY
SUPERVISION, TINA M. STANFORD, CHAIRWOMAN; CHAIR/BOARD OF PAROLE,

*Defendants-Appellants*,

JANE DOE, COMMISSIONER; BOARD OF PAROLE/COMMUNITY SUPERVISION, JOHN
DOE, COMMISSIONER; BOARD OF PAROLE/COMMUNITY SUPERVISION,

*Defendants.*

_____

Before:    LIVINGSTON, *Chief Judge,* PARKER, and ROBINSON, *Circuit Judges.*

_____

Appeal from an interlocutory order of the United States District Court for the Northern District of New York (Kahn, *J.*) declining to grant Defendants-Appellants summary judgment with respect to their claim that the New York Board of Parole Commissioner who voted to impose special conditions of release and the Offender Rehabilitation Coordinator who recommended the conditions were absolutely or qualifiedly immune from suit. Because the Commissioner's challenged acts were quasi-judicial, we conclude that she is absolutely immune from Plaintiff's claims for damages. We do not address the Offender Rehabilitation Coordinator's claim of absolute immunity, but conclude that she is qualifiedly immune from Plaintiff's damage claims because the challenged conditions were not clearly unlawful at the time she recommended them. We **REVERSE** the order and **REMAND** for proceedings consistent with this opinion.

---

KATE L. DONIGER, Kaplan Hecker & Fink LLP, New York, NY (Joshua A. Matz, Kaplan Hecker & Fink LLP, Washington, D.C.; Margaret M. Turner, Kaplan Hecker & Fink LLP, New York, NY; Samuel Weiss, Rights Behind Bars, Washington, D.C., *on the brief*), *for Leroy Peoples*.

KEVIN HU, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Jeffrey W. Lang, Deputy Solicitor General, Kate H. Nepveu, Assistant Solicitor General, *on the brief*), *for* Letitia James, Attorney General State of New York, Albany, NY, *for Gina R. Leon, Ellen E. Alexander, Tina M. Stanford*.

---

ROBINSON, *Circuit Judge*:

At issue in this appeal is whether a corrections professional who recommended that the Parole Board issue certain special conditions of release,

Defendant Gina Leon ("Leon"), and a Parole Board Member on the panel that imposed the conditions, Defendant Commissioner Ellen Alexander ("Alexander"), are absolutely or qualifiedly immune from claims challenging the constitutionality of those conditions and seeking monetary or injunctive relief. Plaintiff-Appellee Leroy Peoples ("Peoples") sued Defendants-Appellants for violating his First and Fourteenth Amendment rights by recommending and imposing certain special conditions of post-release supervision that he contends are unconstitutional. The United States District Court for the Northern District of New York (Kahn, *J.*) denied in part Defendants' motion for summary judgment based on absolute and qualified immunity, and Defendants appealed.

We conclude that Alexander is entitled to absolute immunity for her quasi-judicial actions in imposing the special conditions in 2018. We do not reach the question whether Leon is entitled to absolute immunity, but conclude that she is entitled to qualified immunity for her actions in recommending the challenged conditions because the Internet-related First Amendment right at issue was not clearly established at the time of her actions in 2018, and Peoples has failed to show that the non-Internet related conditions violate Peoples's clearly established due process rights. Accordingly, the judgment of the district court is **REVERSED and REMANDED** for proceedings consistent with this opinion.

## BACKGROUND

In 2018, Peoples was an inmate serving a sentence in the New York Department of Corrections and Community Supervision's ("DOCCS") custody following convictions for two rapes, one in 1998 and one in 2003. His maximum expiration date was June 7, 2019. His claims arise from an October 2018 decision of the New York State Board of Parole (the "Board") declining to grant him discretionary early release and setting special conditions to be applied during Peoples's term of Post-Release Supervision ("PRS") which would begin to run when he was released from prison upon reaching his maximum expiration date.

Leon was employed by DOCCS as an Offender Rehabilitation Counselor. She retired in January 2020 and is no longer employed by DOCCS. In connection with the Board's October 2018 review, Leon made recommendations to the Board regarding its imposition of special conditions upon Leroy's release to PRS. Her recommendations were based on her review of relevant documents and records, and applicable directives, regulations, and statutes. The Board was not bound to follow her recommendations.

Alexander was employed by DOCCS and served as a Commissioner of the Board. She was on the three-member Board panel that conducted Peoples's parole release interview in October 2018. The parole release interview was conducted

pursuant to N.Y. COMP. CODES R. & REGS. tit. 9, §§ 8002.1–8002.3 (2023). In that proceeding, Peoples had the opportunity to speak on his own behalf and to submit written letters of support, his own written statement, and documentation of his choosing. In connection with its review of Peoples's case, the Board panel considered numerous factors, including records and documents concerning Peoples's criminal history, underlying offenses, and DOCCS discipline and activities; letters from various individuals; and the parole packet submitted by Peoples. *See also* N.Y. COMP. CODES R. & REGS. tit. 9 § 8002.2 (2023) (setting forth considerations to guide the Board in its parole release decision-making). The panel declined to grant Peoples discretionary early release, concluding that he should be held until the maximum expiration date of the incarcerative component of his sentence and then released subject to the thirty-six special conditions recommended by Leon. The Board's denial of discretionary early release and its establishment of the special conditions to apply upon Peoples's eventual release were set forth in a single written decision.

In November 2018, almost half a year before his release on special conditions, Peoples initiated this action pursuant to 42 U.S.C. § 1983.[1] He named

---

[1] Peoples's complaint included a host of other claims that were dismissed by the district court and are not at issue on appeal.

Alexander and Leon as defendants, alleging in relevant part that the imposition of some of the special conditions violated his First and Fourteenth Amendment rights.[2] He alleged that he was filing a Section 1983 action because there was no process for appealing the special conditions.

Defendants moved for summary judgment, arguing in relevant part that the claims for monetary and injunctive relief against Alexander were barred by absolute judicial immunity, and that the claims against Alexander and Leon were barred by qualified immunity. Defendants also defended the various challenged conditions on the merits.

Adopting the Report and Recommendation ("R&R") of the magistrate judge in its entirety, the district court in relevant part dismissed on the merits Peoples's challenges to some but not all of the special conditions, concluded that disputed issues of fact precluded a determination that Alexander was absolutely immune from suit, concluded that disputed questions of fact precluded summary judgment

---

[2] Peoples also named as a defendant Board Chair Tina Stanford. The district court dismissed claims for money damages against Stanford in her official and individual capacities, as well as the claims for injunctive relief against her in her individual capacity, but declined to dismiss the claims for injunctive relief directed against her in her official capacity. Neither party has challenged on appeal the district court's judgment as to Stanford, and there is no dispute that Peoples's claim for injunctive relief against Stanford will continue to move forward without regard to whether Peoples's claims against Alexander and Leon survive. Oral Argument at 1:20 to 1:46. In addition, Peoples sued two unidentified defendants, but failed to take reasonable steps to ascertain their identities through discovery. Peoples does not on appeal contest the district court's dismissal of all claims against the unnamed defendants.

for Alexander or Leon on the basis of qualified immunity, and dismissed claims against Leon for declaratory or injunctive relief because she no longer worked for DOCCS. *Peoples v. Leon*, No. 9:18-CV-1349 (LEK/ML), 2021 WL 977222 (N.D.N.Y. Mar. 16, 2021). The challenges to special conditions that the district court did not dismiss relate primarily, but not exclusively, to the use of the Internet and computers. Defendants appealed, challenging the district court's denial of their motion for summary judgment with respect to absolute and qualified immunity for Alexander and Leon.[3]

## STANDARD OF REVIEW

We review a decision whether to grant summary judgment by looking at the facts of a case anew, "resolving all ambiguities and drawing all permissible factual inferences in favor of the non-moving party." *Washington v. Napolitano*, 29 F.4th 93, 103 (2d Cir. 2022). Summary judgment is appropriate only in cases where no genuine dispute of material fact exists, and judgment can be made as a matter of law. *Id*. Nonfinal decisions are reviewable under the "collateral order doctrine," where a court "may review a denial of summary judgment based on qualified immunity on an interlocutory basis if it may be resolved on stipulated facts, or on

---

[3] Although Peoples was released on his maximum expiration date and then subjected to the special conditions at issue in this case, as of the date of oral argument, he had returned to state custody for violating his conditions of supervision.

the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find." *Id*. (citation and internal quotation marks omitted). The same is true for the denial of absolute immunity. *Id*.

## DISCUSSION

Defendants argue that Alexander and Leon are entitled to absolute immunity because the recommendation and imposition of parole conditions were quasi-judicial acts. In the alternative, they contend that Alexander and Leon are entitled to qualified immunity because the First Amendment right to Internet access was not clearly established in October 2018 when the Board set the special conditions, and the remaining conditions did not violate due process. They deny that disputed issues of material fact preclude an award of summary judgment on the immunity issues.

Peoples argues that interlocutory review of Alexander's and Leon's claimed immunity is unwarranted because disputed issues of material fact remain. Even if the district court's judgment is reviewable, Peoples contends that Alexander is not entitled to absolute immunity because her imposition of parole conditions was not a discretionary judicial act, and Leon waived any claim of absolute immunity by failing to raise it before the district court. Peoples also argues that Alexander

8

and Leon are not entitled to qualified immunity because they violated his clearly established rights.

For the reasons discussed below, we conclude that Alexander is entitled to absolute immunity. We do not address Leon's argument for absolute immunity, but conclude that she is entitled to qualified immunity. We conclude that there are no material issues of disputed fact that prevent us from reviewing and resolving these questions on interlocutory appeal.

## I.     Absolute Immunity: Alexander[4]

Alexander argues that she is entitled to absolute immunity for her role in the Board's establishment of Peoples's special conditions of release because she was acting in a quasi-judicial capacity.[5] We agree. The factors that have led this Court to extend judicial immunity to parole board members' decisions to grant or

[4] Peoples argues that Alexander waived her argument for absolute immunity because her objection to the magistrate judge's R&R was inadequate. *See* Plaintiff-Appellee's Br. at 23–26. Our review of Defendants' objections to the magistrate's R&R does not support Peoples's contention. *See* Jt. App'x 640–46. Moreover, although the district court suggested that Alexander's briefing of this issue to the magistrate was insufficiently nuanced, it did not, as Peoples suggests, conclude that Alexander's objections to the R&R were insufficient. *See Peoples*, 2021 WL 977222 at *5. We conclude that Alexander did not waive her argument that she is entitled to absolute immunity.

[5] We decline to consider Leon's argument for absolute immunity, which was raised for the first time on appeal. *See Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 204 (2d Cir. 2014). We choose not to address the argument because we conclude in any event that Leon is entitled to qualified immunity which insulates her from, at a minimum, monetary damages. Because she retired in 2020, the district court properly dismissed all claims against her for injunctive and declaratory relief.

9

deny parole logically extend to their imposition of special conditions of release. The possibility that *some* conditions may be statutorily mandated does not transform the setting of special conditions into an administrative rather than quasi-judicial act. For these reasons, we have not identified any material disputed facts that would preclude granting Alexander's motion for summary judgment that she is entitled to absolute immunity.

Absolute immunity for judges is "firmly established" for acts "committed within their judicial jurisdiction." *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985) (citation omitted).

The Supreme Court has extended absolute immunity to others "who perform functions closely associated with the judicial process," such as federal hearing examiners and administrative law judges. *Id.* at 200. In determining whether absolute immunity applies, the Supreme Court has endorsed a "functional" approach that focuses on "the nature of the responsibilities of [an] individual official," rather than the official's rank, title, or "location within the [g]overnment." *Id.* at 201 (quoting *Butz v. Economou*, 438 U.S. 478, 511 (1978)). The Supreme Court has identified a non-exhaustive set of factors characteristic of the

judicial process which may be considered when determining whether absolute immunity applies:

> (a) the need to assure that the individual can perform [their] functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Id.* at 202 (citing *Butz*, 438 U.S. at 512).

This Court has recognized that parole board officials deciding to grant or deny parole perform a sufficiently quasi-judicial function to qualify for absolute immunity. *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) ("[W]e join our sister circuits and hold directly that parole board officials, like judges, are entitled to absolute immunity from suit for damages when they serve a quasi-adjudicative function in deciding whether to grant, deny or revoke parole."). In *Montero* we explained, "[t]he concerns that provide the primary rationales for affording judges absolute immunity when performing actions within their judicial capacity . . . apply with equal force to parole board officials deciding whether to grant, deny or revoke parole." *Id.* at 760. In particular, we recognized that, like judges, if parole board officials had to fear adverse consequences from their parole

11

decisions, "they would experience great difficulty in rendering impartial decisions, a responsibility essential to the proper functioning of the penal system." *Id*. We noted that absent immunity, "parole board officials, like judges, may find themselves spending an inordinate amount of time and expense defending against baseless suits brought by disappointed parolees, thereby distracting parole board officials from their crucial duties in administering the state's penal system." *Id*. at 761.

We have not previously decided whether the Board's act of imposing special conditions of release is similarly subject to judicial immunity, but we conclude that the statutory structure, the logic of our decision in *Montero*, the general process by which these special conditions were set, application of the *Cleavinger* factors, and persuasive authority from other circuits all support extension of judicial immunity to Board members' determination of conditions of post-supervision release.

The Board has "the power and duty of determining the conditions of release of the person who may be presumptively released, conditionally released or subject to a period of post-release supervision." N.Y. EXEC. LAW § 259-c(2) (McKinney 2022). This power coexists with the Board's undisputed quasi-judicial power to grant, deny, or revoke parole: "[t]he state board of parole *shall . . . have the power and duty of determining* which incarcerated individuals serving an

indeterminate or determinate sentence of imprisonment *may be released on parole . . . and when and under what conditions.*" *Id.* § 259-c(1) (emphasis added). This statutory language connects the parole board's acts of granting, denying, or revoking parole directly to its determination of special conditions.

Moreover, our observations in *Montero* about the impact of allowing disappointed would-be parolees to sue Board members for denying parole apply in comparable measure to the potential impact of allowing individuals dissatisfied with their conditions of release to sue Board members for damages.

Although Peoples contests some of the specifics of the Board's process, he does not meaningfully contest that a panel of the Board conducted an interview at which he had the opportunity to speak and present his case, that the panel considered a range of information in making its discretionary early release decision in Peoples's specific case, and that it then issued a single decision encompassing both its denial of early release and its setting of conditions.[6] The

---

[6] Peoples disputes that Alexander "reviewed and considered numerous factors, records and documents concerning [Peoples]" because he does not know the numerous factors involved due to the fact that "no manual [is] available to pre-releasee[]s that explain[s] the[] factors consulted." Jt. App'x at 664. This dispute is not material, because he does not contest that the Board conducted a review; he just says he does not know exactly how the Board went about it. Finally, he disputes that speaking in front of the panel would have "bore [any] fruit." *Id.* This is an opinion, and not a dispute of material fact.

proceedings in this case undisputedly bore the general indicia of a quasi-judicial process.

Furthermore, consideration of the *Cleavinger* factors reinforces our conclusion. As noted above, the need to assure that the individual can perform their functions without harassment or intimidation was the primary factor we relied upon in *Montero*; it applies to the setting of special conditions as well as the decision to grant or deny parole. In addition, as for judges, the laws surrounding the selection and tenure of Board members are designed to insulate them from political influence. *Cleavinger*, 474 U.S. at 202. Board members are appointed by the governor with the advice and consent of the senate; they serve for a fixed term and may be removed only for cause after an opportunity to be heard; the board "function[s] independently of the [DOCCS] regarding all of its decision-making functions"; and board members are precluded from holding other public office or serving as an executive officer or employee of any political organization. N.Y. EXEC. LAW § 259-b(1). The absence of a formal procedure for appealing Board decisions setting special conditions of release is a factor that counsels against recognizing absolute immunity in this setting. *See Mitchell v. Fishbein*, 377 F.3d 157, 173 (2d Cir. 2004) ("[I]n the context of determining whether absolute immunity is appropriate Article 78 proceedings are generally not considered adequate avenues

14

for appeal." (citation and internal quotation marks omitted)). But we are mindful that Peoples's claim for injunctive relief against Board Chair Stanford in her "official capacity" is unaffected by our analysis.[7] For these reasons, we conclude that, on balance, extension of absolute immunity to Board members' setting special conditions is consistent with the *Cleavinger* factors.

Other circuits have reached a similar conclusion. *See Thornton v. Brown*, 757 F.3d 834, 839–40 (9th Cir. 2013) ("We have held that absolute immunity extends to parole officials for the imposition of parole conditions because that task is integrally related to an official's decision to grant or revoke parole, which is a quasi-judicial function." (citation and internal quotation marks omitted)); *Mayorga v. Missouri*, 442 F.3d 1128, 1131 (8th Cir. 2006) ("[A]bsolute immunity applies if parole officials have the power to attach conditions to a prisoner's early release.").

Peoples's argument that absolute immunity does not apply because the Board lacked the discretion to decline to impose some or all of the challenged conditions does not persuade us otherwise. Peoples contends that judicial immunity protects adjudicative acts, but not administrative ones, and that the

---

[7] We express no opinion about what other avenues for review may be available to Peoples.

imposition of a mandatory condition—a matter with respect to which the Board has no discretion—is necessarily an administrative act.

We agree that absolute immunity attaches to the *types* of acts that are infused with adjudicatory discretion, whereas Board actions that do not generally involve the exercise of adjudicatory discretion are not subject to judicial immunity. *Cf. Scotto v. Almenas*, 143 F.3d 105, 112–13 (2d Cir. 1998) (declining to extend absolute prosecutorial immunity to a parole officer who was required by law to report a parolee's violation of a condition of parole, but applying absolute prosecutorial immunity to a parole officer who made a discretionary decision to sign an arrest warrant initiating parole revocation proceedings). But in determining whether the imposition of special conditions is the kind of quasi-adjudicatory act that qualifies for absolute immunity, we do not parse the discretionary nature of each particular special condition; instead, we consider the nature of imposing special conditions more generally. After all, even judges in sentencing are sometimes bound by statutory mandates minimizing or eliminating their sentencing discretion, but that doesn't render their imposition of such sentences administrative rather than adjudicatory.

## II. Qualified Immunity: Leon[8]

Leon argues that she should receive qualified immunity for her work recommending both the Internet and non-Internet conditions. Qualified immunity "shields both state and federal officials" from private suits for damages unless they "violated a statutory or constitutional right that . . . was clearly established at the time of the challenged conduct." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (citation omitted). In evaluating a claim of qualified immunity, we must determine whether any constitutional right that the defendant violated "was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)).

A right is "clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what [they are] doing violates that right." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (quoting *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010)) (internal quotation marks omitted). However, this does not mean that "an official action is protected by qualified immunity unless the very action in question has previously been held

---

[8] Peoples argues that Leon waived her argument for qualified immunity because of inadequate objection to the magistrate judge's R&R. Our review of the substance of the decision persuades us that the magistrate's conclusions were clearly wrong. Given that the waiver rule is nonjurisdictional, we excuse any possible waiver "in the interests of justice." *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993).

17

unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal citation omitted); *see also White v. Pauly*, 580 U.S. 73, 79 (2017) (explaining that for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate" (citation omitted)).

For purposes of determining whether Leon violated Peoples's clearly established rights when she made her recommendations in October 2018, we divide Peoples's remaining challenges to the special conditions imposed by the Board into two categories: Internet-related conditions, and other conditions.

## A. Internet Conditions

The bulk of the conditions Peoples challenges restrict his access to the Internet by, among other things, prohibiting him from accessing commercial social networking sites or Internet-enabled gaming activities, and prohibiting him from possessing a computer or Internet-enabled communication device. Peoples argues that these restrictions deprived him of his constitutional right to Internet access.

Leon argues that the right to Internet access for individuals in post-release community supervision was not clearly established until this Court's January 2019 decision in *United States v. Eaglin*—three months *after* Leon recommended Peoples's special conditions. 913 F.3d 88 (2d Cir. 2019). In *Eaglin*, this Court

concluded that "the imposition of a total Internet ban as a condition of supervised release inflicts a severe deprivation of liberty" that will only be substantively reasonable in "highly unusual circumstances." *Id.* at 97.

We agree with Leon that Peoples's constitutional right to Internet access was not clearly established at the time Leon undertook the acts for which he seeks to hold her liable.[9]  In reaching this conclusion we consider the Supreme Court's watershed 2017 decision in *Packingham v. North Carolina*, as well as subsequent decisions within this Circuit.  582 U.S. 98 (2017).

In *Packingham,* the Supreme Court considered a North Carolina law that made it a felony for a registered sex offender to access any commercial social networking website where the offender knows that minor children may become members.  *Id.* at 101.  The Supreme Court recognized the central role of the Internet in modern society as a place for the "exchange of views," *id.* at 104, and concluded that the statute in question enacted a prohibition "unprecedented in the scope of [the] First Amendment speech it burdens," *id.* at 107.  The Court concluded that

---

[9] Peoples emphasizes that the *actual* deprivation of his constitutional rights occurred in June 2019, when he was released from custody and subjected to the challenged special conditions.  By that time, this Court had decided *Eaglin*, and the constitutional right at issue was well-established. However, the acts for which Peoples seeks to hold Leon liable involve her recommendation to the Board concerning his special conditions.  We find no allegations in Peoples's complaint of any acts, or failures to act, by Leon after the October 2018 proceeding.

"to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights."  *Id.* at 108.  It added:

> [i]t is unsettling to suggest that only a limited set of websites can be used even by persons who have completed their sentences. Even convicted criminals—and in some instances especially convicted criminals—might receive legitimate benefits from these means for access to the world of ideas, in particular if they seek to reform and to pursue lawful and rewarding lives.

*Id.*  The Court also added that though the issue was not before it, "it can be assumed that the First Amendment permits a State to enact specific, narrowly tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime," and that laws of that type must be the State's "first resort."  *Id.* at 107.  It also found "troubling" that "the [North Carolina] law impose[d] severe restrictions on persons who [have] already . . . served their sentence and are no longer subject to the supervision of the criminal justice system."  *Id*.

The Supreme Court's language in *Packingham* was broad, and its analysis did not turn on the fact that the individuals impacted by the North Carolina statute were no longer subject to state supervision.  Nevertheless, following *Packingham*, district courts in our circuit split regarding whether *Packingham* clearly established a First Amendment right to Internet access for individuals under state supervision.

20

In *Yunus v. Robinson*, a district court upheld a claim of qualified immunity, even while concluding that a condition of release was unconstitutional under *Packingham*.[10]  No. 17-CV-5839 (AJN), 2019 WL 168544, at *1 (S.D.N.Y. Jan. 11, 2019).  In that case, an offender whose offense did not include any sexual elements was subjected to parole conditions broadly restricting his Internet access.  The district court determined that the plaintiff pled a First Amendment claim on the merits, but concluded that the defendants were entitled to qualified immunity because it had not been established in the jurisdiction that *Packingham* applied to conditions of supervised release and a number of other federal courts had indicated that it might not.  *Id.* at *17.  For that reason, "the constitutional question of *Packingham*'s application in this context was not beyond debate."  *Id*.

On the other hand, in *Ennis v. Annucci*, a district court read *Packingham* as establishing a First Amendment right and cited state and federal cases from around the country that had "invalidated a variety of broad-based internet or social media restrictions imposed on sex offenders simply because they are sex offenders."  No. 5:18-CV-0501 (GTS/TWD), 2019 WL 2743531, at *8 (N.D.N.Y. July 1, 2019) (citation omitted).  The court concluded that the defendants were entitled

---

[10]  The *Yunus* decision was released the same day as *Eaglin* and accordingly does not rely in any way on that Second Circuit decision.

to qualified immunity for any deprivation of First Amendment rights the plaintiff suffered prior to *Packingham*, but not thereafter. *Id.* at *8–9.

In light of this history, we conclude that the right of individuals on post-release supervision to be free from broad restrictions on access to the Internet was not clearly established until the *Eaglin* decision in January 2019. Because every allegedly wrongful act by Leon occurred in 2018, we conclude that she is entitled to qualified immunity with respect to those acts.

## B. Non-Internet Conditions

Peoples challenges two other special conditions recommended by Leon and imposed by the Board. One provides that Peoples must "comply with all case specific sex offender conditions to be imposed by the P.O." Jt. App'x at 43. The other requires Peoples to "provide copies of financial documents to [the] parole officer upon request." Jt. App'x at 44. These documents "may include, but are not limited to, all credit card bills, bank statements, and income tax returns." *Id.* Peoples argues that these conditions violate his due process right not to be subject to vague and arbitrary special conditions, and the financial condition violates his due process rights because it is not reasonably related to his past conduct. Leon, in turn, argues that she is protected from Peoples's claims by qualified immunity.

We need not at this juncture resolve Peoples's challenges on the merits. As above, the question is whether "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what [they are] doing violates that right." *Anderson*, 483 U.S. at 640. We conclude that neither condition was so clearly unlawful when Leon recommended it that its unlawfulness would have been apparent to any reasonable official.

### 1. "Case-specific" Conditions

With respect to the condition requiring Peoples to comply with "case specific sex offender conditions to be imposed by the P.O.," Jt. App'x at 43, Peoples relies heavily on the general principle that "[d]ue process requires that the conditions of supervised release be sufficiently clear to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *United States v. Simmons*, 343 F.3d 72, 81 (2d Cir. 2003) (citation and internal quotation marks omitted). But he does not explain how the challenged condition falls short on that measure, nor does he cite any cases in which courts have invalidated comparable conditions.

Because he would be given notice of any specific condition actually imposed by his parole officer, Peoples would not have to "guess" what was expected of him. *See LoFranco v. U.S. Parole Comm'n*, 986 F. Supp. 796, 808 (S.D.N.Y. 1997), *aff'd*,

175 F.3d 1008 (2d Cir. 1999) ("A special condition of parole that is so vague that a person of common knowledge must guess at its meaning will be struck down as void for vagueness.").

To the extent Peoples is challenging the delegation of broad authority to the parole officer, we note that parole officers are statutorily authorized to impose special conditions. *See* N.Y. COMP. CODES R. & REGS. tit. 9, § 8003.3 ("Each special condition may be imposed by a member or members of the [Board], an authorized representative of the Division of Parole, or a parole officer."). Peoples has not cited any law narrowing this authority. In sum, Peoples has failed to demonstrate that Leon's recommendation of these case-specific conditions violated his clearly established rights.

2. Financial Monitoring

Peoples argues that the condition requiring him to provide financial documents to his parole officer on request is vague, overbroad, and not sufficiently tied to his underlying offenses. He cites cases supporting the general proposition that conditions should be reasonably or necessarily related to legitimate state interests in light of the crime and conduct underlying an offender's conviction. *See, e.g., Trisvan v. Annucci*, 284 F. Supp. 3d 288, 297 (E.D.N.Y. 2018). But he does not cite any decisions in which the Supreme Court, this Court, or even other courts

24

in this Circuit disapproved financial monitoring conditions similar to the one he challenges.

We conclude that the imposition of the financial disclosure condition in this case was not so clearly unlawful as to defeat Leon's qualified immunity from Peoples's claims. This Court previously joined at least two sister circuits in reasoning that "monitoring an offender's finances deters the offender from returning to a life of crime by forcing [them] to account for [their] income." *United States v. Brown*, 402 F.3d 133, 137 (2d Cir. 2005). To be sure, the fit between the financial disclosure condition and Peoples's underlying convictions for rape is more tenuous, but in the absence of more authority from Peoples, we cannot conclude that the condition so clearly violated his legal rights as to defeat Leon's qualified immunity.

## CONCLUSION

For the reasons set forth above, we hold that Alexander is entitled to absolute immunity for her acts in 2018, and Leon is entitled to qualified immunity for her acts in 2018. Accordingly, the district court's judgment denying summary judgment for Defendants on these issues is **REVERSED** and the case is **REMANDED for further proceedings consistent with this opinion.**